Mr. Justice James
delivered the opinion of the Court:
This is an action to recover rent under a lease. The indenture demised to the defendants, for a term of 20 years, in consideration of the sum of $1 and’ the performance of the covenants therein contained, a certain tract of land in this District, known as Dumbarton Soapstone Hills, together with all privileges thereto belonging, “ and especially the right to quarry and manufacture soapstone upon the said property,” upon the following terms and condi *605 tions: “First, to pay a royalty or rental for'all solid merchantable stone quarried or taken from said property, the sum of 2 cents per square foot, board measure; second, to pay a royalty or rental for all loose broken stones or spalls, quarried or taken from said property, the sum of 75 cents per ton; third, to pay and account for said stone semiannually upon the first day of January and July in each year.” The defendants then covenanted as follows: “That they will guarantee to take out (or will pay for whether taken out or not), during the continuance of this lease, sufficient stone to yield the following royalty or rental to the said lessors: For the first year the sum of $400; for the second year the sum of $800; for 'the third year, and for each succeeding year during the continuance of this lease, the sum of $1,000.” The declaration states that the two half-yearly instalments of $400, payable for the second year, with interest on each, are due and wholly unpaid.
To this declaration the following pleas were filed :
“ First.- That said plaintiffs ought not to have or maintain their said action herein against these defendants, because they say that the said contract of. lease was made and entered into by the plaintiffs and defendants under a mutual mistake of fact which renders the said lease void ; that is to say, that the consideration and subject-matter of the said lease was the supposed existence, in the ground demised, of solid merchantable soapstone and loose broken stone or spalls of merchantable quality, and the fact that such deposit was not to be found there was not known, either to the plaintiffs or defendants, at the date of signing said agreement, and could not be definitely ascertained without great expense in making excavations and developing the said supposed quarry. That after the execution of said contract these defendants, with others, took initiatory steps to organize a corporation under the general laws of the District of Columbia, to work the said supposed soapstone quarry. That a certificate of incorporation was prepared, *606 executed, and reeprded in the office of the Recorder of Deeds of said District, and a fund was raised by the prospective stockholders in said company (which company was to be known as the Dumbarton Soapstone Company), for the purpose of opening the supposed quarry, and ascertaining what quality and quantity of such soapstone it con- ' tained, if any, that should be found merchantable. That a large sum of money was raised in this -way by said company, and the defendants, Smith and Vermilya, paid the plaintiffs $400 for the first year’s royalty or rental of said property, as agreed, from their own means; and $3,000 or upwards was spent in excavating in different places on the said lot, and in testing the stone found, and in otherwise preparing for conducting said proposed business, from moneys so raised by said company. That this investigation demonstrated the fact, and these defendants now aver, that there was no solid merchantable soapstone on or in the said premises and no loose broken stone or spalls, such as described in said lease, that was of such a quality,as to be of any value whatever.
The result of this demonstration was that the said company ceased its operations before the end of the first year of said lease, and never completed its organization by payment of its contemplated capital, and issuance of its stock, and is now dissolved under the provisions of the said general act of incorporation. That the plaintiffs well knew at the time the said lease was executed the scheme whereby the character and contents of said supposed soapstone quarry were to be ascertained ; and the plaintiffs well knew, a§ did also these defendants, at said time, that it was necessary to make the examination of said premises by excavations, at great expense, to determine with certainty their contents, and also well understood that, if it should appear when such examinations were made, that no merchantable soapstone should be found, and no loose, broken stone or spalls, as described and intended to be referred to in said lease, *607 and as was supposed to exist there, that then the said contract of lease should be treated as at an end, and- the plaintiffs were at liberty to resume possession of said property, and defendants to be excused from paying said royalty or rental. They further state that when such was found to be the case, to wit, before the expiration of the first year of said lease, these defendants and the said proposed company, for whom they had obtained the lease, abandoned the said premises, which consist only of a barren vacant hill and ground, the possession of which is wholly without value or profit in any way, and then, to wit, before entry upon the ■second year of said lease, informed the plaintiffs of such abandonment, and also of the reason therefor, to wit, that the said premises did not contain any solid merchantable soapstone, or. any such loose broken stone or spalls as was ■supposed when said lease was executed.
“ Second. And for a second amended plea, these defendants say, that the consideration of the said contract of lease wholly failed during the first year thereof.
“ Third. And for a third amended plea, they say that the said supposed merchantable soapstone, which was the whole subject-matter and consideration of said contract, never was in existence on or in tlie said premises, and that the said contract is therefore void from its inception.”
To these pleas the plaintiffs demurred, and thereupon - this cause was certified to be heard here in the first instance.
The defense set up by these pleas, and at the argument, is that this indenture was in effect merely the grant on one hand of a right to quarry soapstone, and, on the other hand, an agreement to pay a royalty on such soapstone, and that consequently nothing was to be paid if no soapstone was there.
We think that such a defense wholly ignores the terms of the contract. Undoubtedly, the supposed existence of merchantable soapstone in the premises was an inducement, perhaps the whole inducement, to take a lease of the land; *608 but by its terms, this was, primarily and principally, a lease of the land ; and the right to quarry, though not an appurtenance, was placed on the subordinate footing of an appurtenance. The lessee would have the land in any case; and, although the rent was to vary according to the product of soapstone, the contract provided a fixed minimum, which was to be paid at all events. We think that, so long as the lessee had the land — which, according to the terms chosen by the parties, was the principal thing demised — there could be no failure of consideration. Failure to obtain merchantable soapstone would only be a disappointment of the inducement which led to the contract. In order to makei/iai a ground for rescinding the contract, there must be .an express condition to that effect. The law cannot supply such a condition, when the parties have omitted to provide it. We refer here to the distinction between failure of consideration, that is to say, of the subject-matter of a contract, and failure of the inducement. It is as to the latter, that the law will refuse to supply a condition by implication.
In the cases referred to by the defendants, the contracts were not like the one we are considering. In Clifford vs. Watts, 5 Com. Pleas, 577, the lease was not of the land, but of a right to dig clay; and no fixed rent was reserved. As the contract was only -to dig and pay for a certain amount of potter’s clay each year during the term of the lease, it was, as a matter of construction, upon a condition that so much clay was in the land.
In Brick Co. vs. Pond, 38 Ohio Stat., 65, the thing demised-was, “ all the clay that was good No. 1 fine clay, on his (lessor’s) land * * * for the term of three years, subject to the following conditions, that is to say: providing said parties of the second part shall mine, or cause to be mined, or pay for not less than 2,000 tons of clay every year; and shall pay therefor 25 cents per ton for every ton of clay monthly, as it is taken away.” The court said: “ As this was not a lease of the land at an agreed rent per *609 annum, but a contract for the exclusive privilege of mining and removing during the term, ‘ all the clay that is good No. 1 fine clay,’ it follows, we think, that unless there was such clay on the land,' nothing was payable under the contract.” I
TAhe contract in Muhlenberg vs. Henning, 116 Pa. Stat., 138, is distinguishable in the same way.' Like the case just referred to, it was only a lease in form. It did not include the land, but was only a contract for the right to enter and take ore, and there was no fixed rent. In that case the court necessarily found that there was an implied condition that the thing contracted for should be there.
As the lessees still have the land by this demise, the effect of their defense would be, that they are to have it without rent, because the rent was measured by product and it produces nothing. This defense ignores the provision for fixed minimum rent. We do not perceive how a term can be thus revested in the lessors.
The demurrer is sustained, and cause remanded.